## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TIFFANY HINSLEY,

                    Plaintiff,

v.                                             No. 2:21-cv-00281-WJ-GJF

CREDITBOX.COM, LLC,

                    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR REMAND AND ATTORNEY'S FEES AND REMANDING THE CASE TO THE FIRST JUDICIAL DISTRICT COURT

THIS MATTER is before the Court upon Plaintiff's Motion for Remand, filed April 4th, 2021 (Doc. 11). Plaintiff submits that the Tenth Circuit's anti-aggregation principle precludes aggregation of attorney's fees in determining whether the amount in controversy meets the threshold for federal jurisdiction. Defendant responds that recent caselaw from this District Court opens the door to considering aggregated attorney's fees in the context of claims brought under the New Mexico Unfair Trade Practices Act (the "UPA"), NM Stat § 57-12-10 (2019). Having reviewed the parties' submissions and the controlling law, the Court has decided that remand back to state court is proper but no attorney's fees will be awarded to Plaintiff for filing her Motion for Remand.

### BACKGROUND

In 2017, Plaintiff Tiffany Hinsley entered into a series of loans with Defendant CreditBox.com LLC ("Defendant" or "CreditBox"), an internet loan provider licensed in New Mexico. Doc. 1-1 at 3, ¶¶ 16-17. In each loan, CreditBox required the use of debit authorizations for repayment of the loan—so called "payday loans," as defined in NMSA § 58-15-2(H). *Id.*, ¶¶ 19-20. Plaintiff alleges that the charges drawn from her account were significantly more than was permitted under New Mexico law. For instance, CreditBox imposed a finance charge on one loan in the amount of $4,760.72, when finance charges were capped at $248.50 by NMSA § 58-15-33(A) through (D). *Id.*,

1

¶¶ 22-24. Ultimately, Plaintiff was unable to pay back her loans, and CreditBox continued to demand payment. *Id.*, ¶¶ 27-28.

On February 9, 2021, Plaintiff filed her Class Complaint for Damages (Doc. 1-1) in the First Judicial District Court, Rio Arriba County. Therein, Plaintiff alleges that CreditBox violated the UPA, and asks the Court to void the allegedly unlawful loans CreditBox made to class members and enjoin CreditBox from collecting any further interest on the loans. Doc. 1-1. On March 26, 2021, CreditBox removed the case to the United States District Court for the District of New Mexico. Doc. 1. Plaintiff now challenges the Court's subject matter jurisdiction under 28 U.S.C. § 1332(a), claiming that Defendant has failed to establish that the amount in controversy could possibly exceed the $75,000 required for this case to remain in federal court. *See* Doc. 11 at 2-2.

## LEGAL STANDARD

28 U.S.C. § 1332(a) grants original jurisdiction to federal district courts in "all civil actions where the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, [] between . . . citizens of different States." The amount in controversy includes actual damages and a "reasonable estimate" of attorney's fees. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998). Moreover, in the context of class action litigation, the amount of controversy must be established by a single plaintiff and a single defendant, not through an aggregation of the claims across the class. S*ee Snyder v. Harris*, 394 U.S. 332, 336 (1969).

When diversity jurisdiction is challenged, the removing "defendant must prove facts in support of the amount in controversy by a 'preponderance of the evidence.'" *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). Once the jurisdictional facts have been established by a preponderance of the evidence, a defendant's claim that the amount in controversy exceeds $75,000 need only be plausible to remain in federal court. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

2

Therefore, "the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it possible that $75,000 [is] in play …" *McPhail* 529 F.3d. at 955 (emphasis removed). Jurisdictional facts may be established by:

> [C]ontentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint ….

*Id*. at 954 (citing *Meridian Security Ins. Co. v. Sadowski,* 441 F.3d 536, 540–43 (7th Cir.2006)).

Generally, attorney's fees are not aggregated in calculating the amount in controversy for diversity jurisdiction. *See Martin v. Franklin Capital Corp*., 251 F.3d 1284, 1293 (10th Cir. 2001) (overruled on other grounds). However, footnote 7 of *Martin* states that "[t]he result might be different if the state statute under which fees are sought *expressly* awards those fees solely to the class representatives." *Id.* at 1293 n.7 (emphasis added).

## DISCUSSION

Parties do not dispute that diversity of citizenship exists. Doc. 11 at 2. Plaintiff disputes whether Defendant has met its burden with respect to the amount in controversy for federal jurisdiction.

I.    Actual Damages

Defendant and Plaintiff agree that Plaintiff's claim for actual damages cannot be aggregated across the class. Doc. 11 at 4. Defendant suggests that Plaintiff's actual damages amount to $7,541.68. Doc. 1 at 7. Plaintiff argues that the amount of actual damages is $6,185.28. Doc. 11 at 4. The award of actual damages may be subject to trebling pursuant to the UPA. NMSA § 57-12-10(B). Under either calculation of actual damages, the potential amount of damages is $18,555.84 or $22,625.04, significantly less than the $75,000 threshold for diversity jurisdiction.

II.     Pro Rata vs. Aggregation

Therefore, for the Court to maintain federal jurisdiction over this matter, the sum of the "reasonable estimate" of attorney's fees must surpass roughly $56,444.16, per Plaintiff's calculations, or $52,374.96, per Defendant's calculations, to meet the $75,000 jurisdictional threshold. *See Miera* 143 F.3d at 1340. Whether a "reasonable estimate" of the attorney's fees could exceed the required amounts listed above depends on whether the attorney's fees are calculated on a pro rata or aggregated basis. *Id.* When attorney's fees are calculated on a pro rata basis, the attorney's fees awarded to a plaintiff's counsel must be divided across all members of the class, and once divided by the number of members in a class action, the attorney's fees can then be added with the potential damages to determine the amount in controversy. For example, on a pro rata basis, $101,000 in attorney's fees awarded to a named plaintiff across a 101-person class becomes $1,000 towards the amount in controversy. [1]

In this case, if the attorney's fees were calculated on a pro rata basis, the attorney's fees would need to be $5,700,860.17, assuming a class of 101 people, to achieve the jurisdictional amount upon pro rata division among the class members. Plaintiff correctly calculates that this would require Plaintiff's counsel to bill over 22,803 hours at the current rate of $250 per hour. Doc. 11 at 9. This is not a "reasonable estimate of attorney's fees." *See Miera* 143 F.3d at 1340. Therefore, the jurisdictional requirement will not be met if attorney's fees are calculated on a pro rata basis.

Defendant argues that the attorney's fees should not be calculated on a pro rata basis, but should instead be aggregated under *Buscema v. Wal-Mart Stores East LP*, which allowed for the aggregation of attorney's fees as to the amount in controversy in an action brought under the UPA. 485 F.Supp.3d 1319, 1333 (D.N.M. 2020) (J. Vázquez). When attorney's fees are aggregated, such fees **are not** dispersed across the class, but rather, class-wide attorney's fees are attributed to the

---

[1] According to Plaintiff, 101 persons is the smallest possible class size consistent with the allegations in this case. Defendant does not dispute this figure.

4

named plaintiff. For example, under an aggregation basis, $101,000 in class-wide attorney's fees awarded to the named plaintiff's counsel becomes $101,000 towards the amount in controversy, regardless of class size. If attorney's fees were aggregated, then Plaintiff's counsel would only need to bill $56,444.17, or approximately 226 hours, in order to reach the jurisdictional threshold of $75,000. This could be a "reasonable estimate of attorney's fees." *See Miera* 143 F.3d at 1340.

III.     Aggregation of Attorney's Fees

The question presented here is whether the estimated attorney's fees can be aggregated for class actions brought under the UPA when calculating the amount in controversy. Plaintiff submits that aggregation is not allowed, referring to the only authoritative case on the matter, *Martin v. Franklin Capital Corp.* In *Martin*, the Tenth Circuit held that attorney's fees could not be aggregated and attributed entirely to a named plaintiff in assessing whether such fees met the amount in controversy requirement for federal jurisdiction. 251 F.3d at 1293. Defendant responds that *Martin* does not preclude aggregation because the court in *Martin* specified that its finding "might be different if the statute under which the fees are sought expressly awards those fees solely to the class representatives," thus creating an exception later recognized by this District Court as allowing for aggregation of attorney's fees for claims brought under the UPA. *Id*. at 1293 n.7; *Buscema*, 485 F.Supp.3d at 1333.

*Buscema*, the only other case from this Court that has attempted to interpret *Martin*'s anti-aggregation rule[2] in this context, found that *Martin*'s exception applied "where the state statute

---

[2] The anti-aggregation rule articulated in *Martin* reads as follows: "[A]ttorney's fees cannot be aggregated for purposes of diversity jurisdiction." 251 F.3d at 1293. In coming to this conclusion, the Tenth Circuit approvingly cited *Morrison v. Allstate Indem. Co*., 228 F.3d 1255, 1266–68 (11th Cir. 2000) for the proposition that "when each class member could recover attorneys fees if he sued separately, the right to recover fees was separate and distinct and could not be aggregated." *Id*.; *see also Spielman v. Genzyme Corp*., 251 F.3d 1, 7-10 (1st Cir. 2001); *Crawford v. F. Hoffman-La Roche Ltd*., 267 F.3d 760, 767 (8th Cir. 2001); *Coghlan v. Wellcraft Marine Corp*., 240 F.3d 449, 455 n.5 (5th Cir. 2001) ("The standard approach to awards of attorney's fees in a class action context is to distribute them pro rata to all class members, both named and unnamed.").

under which the attorney's fees are sought *allows* for those fees to be awarded solely to the class representatives."  485 F.Supp.3d at 1333 (citing *Martin*, 251 F.3d at 1293 n.7) (emphasis added).

The issue thus becomes:  does *Martin* require the statute in question to "allow" aggregation of attorney's fees in order for an aggregated figure to count towards the jurisdictional requirement of $75,000, as *Buscema* states, or does *Martin* require the statute to "expressly award" such aggregated fees? After a careful and thorough review of *Martin,* this Court does not  interpret footnote 7 in *Martin* in the same manner as the  *Buscema* Court interpreted footnote 7 because in *Martin*, the Tenth Circuit held that the anti-aggregation rule may not apply "if the statute under which the fees are sought *expressly* awards those fees solely to the class representatives." 251 F.3d at 1293 n.7 (emphasis added). "Expressly" has a specific and concise meaning, and the UPA does not expressly allow attorney fee awards solely to the class representatives. Based on this Court's reading of controlling Tenth Circuit precedent in *Martin*,  the Court does not find any merit in Defendant's argument that the UPA "expressly" awards, or even "expressly" allows for the award of, attorney's fees to a named plaintiff/class representative. Therefore, relying on *Martin,* the Court concludes that aggregation is not appropriate under the UPA or any state statute lacking an express assignment or authorization of class-wide attorney's fees to class representatives.

Additionally, the language of the statute itself is also helpful to the Court's determination. Section C of the UPA, the language underlying this dispute, reads as follows:

> The court shall award attorney fees and costs to the **party**[3] complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails.

§ 57-12-10(C) (emphasis added).

---

[3] It is also important to note that this section of the UPA is not specific to class actions, so the fact that "party" is singular does not instruct or imply that attorney's fees can be awarded to a singular "party," ostensibly the named plaintiff, in multi-party actions. Further, many similar statutes with similar singular noun identifiers have been found not to warrant aggregation. *See infra* note 7.

As the *Buscema* Court noted, this language does not explicitly foreclose the possibility of aggregating attorney's fees to a named plaintiff, at least reading it separate from the rest of the statute, but at the same time, it likewise does not expressly award attorney's fees to a named plaintiff. Furthermore, the intention of the legislature is not so unclear when Section C of the UPA is read in the context of the entire statute. More specifically, the Court is not persuaded that the state legislature intended for the word "party" in Section C to mean a named plaintiff or representative party because Section E of the UPA expressly permits awarding to "named plaintiffs" damages as provided in Section B of the UPA, which are identified as loss of money or property and trebling, *not* attorney's fees. With regard to Section C of the UPA concerning attorney's fees, the legislature did not use the phrase "named plaintiffs," so both the "Presumption of Consistent Usage" and "Harmonious-Reading" canons of statutory construction suggest that the legislature did not intend for attorney's fees to be aggregated to named plaintiffs in actions brought under the UPA. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) ("a material variation in terms suggests a variation in meaning," while terms which are identical are "presumed to bear the same meaning throughout a text") (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170-73 (2012)); *United States v. Collins*, 859 F.3d 1207, 1225 (10th Cir. 2017) (citing approvingly the Presumption of Consistent Usage and noting that "the court must consider not only the bare meaning of the [text] but also its placement and purpose in the statutory scheme") (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)) (internal quotation marks omitted); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). The possible exception articulated in *Martin*'s footnote 7 therefore does not include the UPA, as the attorney's fees provision of the statute does not expressly provide for aggregation. 251 F.3d at 1293 n.7.

Defendant also argues that because aggregated attorney's fees have been awarded in UPA cases before, such fees are "possible" and should therefore be considered when determining whether the threshold for federal jurisdiction is met. *McPhail* 529 F.3d. at 955 ("the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that made it possible that $75,000 was in play . . . ."). The Court was able to locate two such instances. One is a judgment out of the Second Judicial District Court of New Mexico in the case of *Puma v. Wal-Mart Stores East LP*. In *Puma*, as far as the Court can tell from the limited available filings, the plaintiff was awarded aggregated attorney's fees in a final judgment. D-202-CV-2013-06321 (2019). The other case is *Clara Daye v. Community Financial Service Centers, LLC*. The *Daye* court seems to have issued a similar judgment aggregating attorney's fees. No. CIV 14-0759 JB/SCY (D.N.M. 2018) (J. Browning).

The Court's reading of *Martin* compels a different result from these judgments. The Court is unable to find any Tenth Circuit precedent supporting the award of aggregated attorney's fees in UPA judgments, and therefore does not believe the existence of such judgments represents a genuine legal "possibility" that Named Plaintiffs in this matter can receive $75,000 in damages upon disposition of the case. Moreover, even if attorney's fees were more commonly aggregated at the state level, this Court is charged with making the calculation. *Martin* advises the Court not to calculate jurisdiction using aggregated attorney's fees absent express statutory instruction to do so, so existing judgments aggregating fees are not relevant to this Court's determination.

The Court therefore finds that Plaintiff's reliance on *Buscema* is misplaced based on this Court's different interpretation of *Martin*. In reaching this conclusion, the Court relies on the Tenth Circuit's holding in *Martin* that the general rule against aggregation of attorney's fees in the class action context prevails unless the legislature drafted the relevant statute "expressly" to override this

presumption. 251 F.3d at 1293 n.7.  No such express language regarding aggregation of attorney's

fees in class actions can be found in the UPA.

The Fifth Circuit came to the same conclusion in a situation where the legislature clearly

intended for fees to be aggregated under the relevant statute. In *Free v. Abbott Lab. (In re Abbott

Lab.)*, 51 F.3d 524 (5th Cir. 1995), the Fifth Circuit examined Article 595 of the Louisiana Code of

Civil Procedure in a case nearly identical to the case at hand. Article 595 reads as follows:

> The court may allow the **representative parties** their reasonable expenses of
> litigation, including attorney's fees, when as a result of the class action a fund is made
> available, or a recovery or compromise is had which is beneficial, to the class.

Article 595 of the Louisiana Code of Civil Procedure (emphasis added).

The only material difference between the language of Article 595 and the UPA is the use of

the phrase "representative parties" instead of "party." Clearly, the state legislature of Louisiana, in

drafting Article 595, explicitly provided for aggregation of fees, including attorney's fees, to the

"representative parties," i.e., the named plaintiffs. There could be no better example of *Martin*'s

reference to statutes "expressly" awarding fees to "class representatives" than this Louisiana statute.

The UPA differs from the Louisiana statute because Section C of the UPA does not distinguish which

"party complaining" is entitled to fees and therefore gives no hint as to whether aggregation or pro

rata distribution of fees was contemplated by the legislature. § 57-12-10(C).

It is the explicit nature of Article 595's language, awarding fees to "representative parties,"

that underlies the holding in *In re Abbott*.  51 F.3d at 526-27 ("[t]he plain text of the first sentence of

595 awards the fees to the 'representative parties' … [and] the distinct policy choices behind

Louisiana's decision regarding rights of recovery by class members … [means that] under the law of

Louisiana the class representatives were entitled to fees.") (internal citations omitted). *Coghlan v.

Wellcraft Marine Corp.* expands on this Fifth Circuit principle. 240 F.3d 449 (5th Cir. 2001). In

*Coghlan*, the Fifth Circuit noted only one example of when aggregation of attorney's fees to a named

9

plaintiff in a class action was acceptable, and noted further that this example was "peculiar to a Louisiana statute" and did nothing to undermine "the standard approach to awards of attorney's fees in a class action context," which is "to distribute them pro rata to all class members, both named and unnamed." 240 F.3d at 455 n.5. Unsurprisingly, the peculiar "Louisiana statute" to which the Fifth Circuit referred in *Coghlan* is Article 595, the only statute this Court could find which "expressly" awards attorney's fees to named plaintiffs, and the only statute this Court could find supporting the aggregation of attorney's fees in this context and in the manner sought by Defendant.[4]

IV.    *Martin* and the UPA

While the language of *Martin* appears to apply to all class actions brought under New Mexico statutes, Defendant in this matter allocates a significant portion of its response to arguing that *Martin* is not controlling on the UPA at all. Specifically, Defendant submits that regardless of *Martin*'s finding as to a possible exception to the anti-aggregation rule, the finding itself does not matter

---

[4] On the other hand, many courts have found that similarly written statutes **do not** allow for aggregation. *See, e.g., H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) (refusing to aggregate attorney's fees where the statute did not specifically award them "to the named plaintiffs.") (citing Conn. Gen.Stat. Ann. § 42–110g(d) ("In any action brought by a person under this section, the court may award, *to the plaintiff*, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery, but other relief is granted on behalf of a class, the court may award, *to the plaintiff*, in addition to other relief provided in this section, costs and reasonable attorneys' fees.") (emphasis added)); *Cohen v. Off. Depot, Inc.*, 204 F.3d 1069, 1080 (11th Cir. 2000) (noting that the class would be "the prevailing party" in a class action lawsuit under the statute, not the individual named plaintiff) (citing Fla. Stat. § 501.2105(1) (authorizing an award of attorney fees to "*the prevailing party*" in an action based on deceptive business practices) (emphasis added) and Fla. Stat. § 817.41(6) (mandating an award of attorney fees to "*[a]ny person prevailing*" in an action based on misleading advertising) (emphasis added)); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 767 (8th Cir. 2001) (noting that the Arkansas Deceptive Trade Practices Act makes attorney fees available to "*[a]ny person* who suffers actual damage or injury" as a result of its violation and observing that "each of the individual members of the class has a separate right to recover …..") (quoting Ark.Code Ann. § 4–88–113(f)) (emphasis added); *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 758 (11th Cir. 2000) (refusing to aggregate) (quoting Ga. Code. Ann. § 16-14-6(c) ("*Any person* who is injured by reason of any violation of Code Section 16–14–4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. *Such person* shall also recover attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred.") (emphasis added)); *Goldberg v. CPC Intern., Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (same) (citing Cal. Bus. & Prof. Code § 16750 ("*Any person* who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy . . . and shall be awarded a reasonable attorneys' fee together with the costs of the suit.") (emphasis added)); *Phillips v. Whirlpool Corp.*, 351 F. Supp. 2d 458, 463 (D.S.C. 2005) (same) (quoting S.C. Code Ann. § 36-5-140(a) ("Upon the finding by the court of a violation of this article, the court shall award to *the person* bringing such action under this section reasonable attorney's fees and costs.") (emphasis added)).

because *Martin* does not mention the UPA in the text of the opinion. *Buscema* seems to have come to a similar conclusion. *See* 485 F.Supp.3d at 1333 ("*Martin* is therefore not controlling.")

Defendant makes two arguments on this issue. First, *Martin* did not make any specific finding that the aggregation of fees is improper under the UPA, Doc. 13 at 6 ("In fact, *Martin* never even mentions the UPA or analyzes its attorney's fees provision . . . ."), and second, plaintiffs in *Martin* did not specifically request attorney's fees under the UPA in their Complaint, nor did they argue on appeal that attorney's fees should not be aggregated under the UPA. According to Defendant, the fact that the UPA was one of the "statutes at issue" in *Martin*'s footnote 7 therefore does not matter because the Tenth Circuit did not actually interpret the statutory language of the UPA. *See* 251 F.3d at 1293 n.7.

Defendant's arguments are unpersuasive for two reasons. First, Defendant is incorrect that the plaintiffs in *Martin* did not request attorney's fees under the UPA. Indeed, the complaint filed in *Martin* requests relief under the UPA. Doc. 11-1 at 20 (requesting "such other relief as authorized by 57-12-10 NMSA."). The appellee's brief from *Martin* also notes that the complaint sought attorney's fees under the UPA. Doc. 13-1 at 33 ("the complaint sought … attorney's fees under the Unfair Practices Act on behalf of each class member."). It appears that the Tenth Circuit had plenty of information on the record from which to understand and rule upon the jurisdictional effect of the plaintiffs' request for attorney's fees under the UPA, even if the UPA was not specifically referenced in footnote 7.

Second, the Defendant's argument that the parties in *Martin* failed to present the issue of aggregation on appeal is a deliberate oversimplification. It is true that the defendant in *Martin* did not present this issue directly on appeal, but the court in *Martin* acknowledged this and nevertheless likened the defendant's argument, that *all* requested fees should be considered in calculating the jurisdictional amount, to an aggregation argument. *See* 251 F.3d at 1293 ("Although defendants do

11

not present this argument directly on appeal, they contend that all of the fees requested by the Martins should be considered in determining whether their claims satisfy the amount in controversy, in effect attributing all the fees that will potentially be recovered in this putative class action to the class representatives."). In recognition of this issue, the Tenth Circuit underwent an analysis as to whether attorney's fees can be aggregated for purposes of diversity jurisdiction, *id*., and concluded that "[d]efendants have failed to establish the requisite amount in controversy, and the district court therefore lacked subject matter jurisdiction," *id*., at 1294. In order to conclude that the district court lacked subject matter jurisdiction, it was essential for the Tenth Circuit to decide whether "the attorneys fees sought by the class can be attributed entirely to the Martins as class representatives." The text of the *Martin* opinion therefore supports a finding that the Tenth Circuit considered these issues on appeal and applied the anti-aggregation rule to the facts, ultimately holding that attorney's fees could not be aggregated solely to the named plaintiffs pursuant to any of the statutes under which such fees were requested, including the UPA, because the statutes did not "expressly" provide for it. *Id*., at 1293 n.7. This conclusion is most consistent with the language of the UPA, as a reading of the statute demonstrates that the legislature did not intend to allow aggregation of attorney's fees, and the default rule is to disallow such aggregation.  Accordingly, absent "express" legislative intent for the UPA to provide for aggregation, the presumption against aggregation in class actions prevails. *Id*.

For the reasons set forth above, the Court will not aggregate attorney's fees for purposes of calculating the amount in controversy, and hereby finds that, under both *Martin* and the opinions of other circuits that have thoroughly addressed aggregating attorney's fees under similar statutes, attorney's fees cannot be aggregated to a named plaintiff for class actions brought under the UPA. Therefore, the amount in controversy requirement is not met and the Court lacks subject matter jurisdiction over this case.

V.      Attorney's Fees for the Subject Motion

Plaintiff's Motion includes a request for the attorney's fees associated with bringing the Motion for Remand. Doc. 11 at 1. "[T]he standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 14 (2005).

In this case, Defendant relied on the *Buscema* opinion which was issued by another judge in this District and which ruled in the manner advocated for by Defendant.  For this reason, the Court cannot make the finding that Defendant's reliance on *Buscema* was unreasonable under *Martin v. Franklin Capital*. 546 U.S. at 14.  The Court therefore finds that Defendant's argument was grounded in a belief that *Buscema* would govern the Court's decision as to remand, and that removal was reasonable under the circumstances. Where removal was reasonable, attorney's fees for a motion to remand is not appropriate. Plaintiff's request for attorney's fees on this matter is accordingly **DENIED**.

## CONCLUSION

Defendant has failed to show that Section C of the UPA expressly provides for aggregated attorney's fees under the requirements of *Martin*. Further, there is no express language in the UPA allowing for aggregation of attorney's fees for plaintiffs/class representatives in class actions brought under the UPA. Accordingly, the Court shall not aggregate attorney's fees for purposes of the amount in controversy calculation and will instead calculate such fees pro rata. Under a pro rata apportioning of attorney's fees, Plaintiff's counsel would have to bill $5,700,860.17, with a class of 101, to reach the $75,000 jurisdictional threshold. This would require Plaintiff's counsel to bill 22,803 hours at the current rate of $250 per hour—over two and a half full years of uninterrupted billing—which is by no means a "reasonable estimate of attorney's fees." *See Miera* 143 F.3d at 1340. Defendant has not shown that attorney's fees calculated pro rata per class member could establish the jurisdictional amount and has accordingly failed to prove that it is legally possible for the jurisdictional amount to

be met. Defendant having failed to meet its burden of proving jurisdictional facts, this action is therefore **REMANDED** back to the First Judicial District Court of the State of New Mexico.

              **IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE